IN THE COURT OF COMMON PLEAS, FRANKLIN COUNTY, OHIO

NATIONWIDE MUTUAL INSURANCE : 
COMPANY :
One Nationwide Plaza :
Columbus, Ohio  43215, :
 :
         Plaintiff, :    Case No. 08 CVH 11 15749
 :
    v. :    Judge
 :
B. DIANE TAMARIZ-WALLACE :
3069 Solomons Island Road :
Edgewater, Maryland 21037, :
 :
    and :
 :
DIANE TAMARIZ & ASSOCIATES, P.A., :
3069 Solomons Island Road :
Edgewater, Maryland 21037, :
 :
    and :
 :
GEORGE T. MORAN, INC., :
696 Ritchie Highway :
Severna Park, Maryland 21146, :
 :
    and :
 :
MORAN INSURANCE SERVICES, INC. :
696 Ritchie Highway :
Severna Park, Maryland 21146. :
 :
        Defendants. :

FILED COMMON PLEAS COURT FRANKLIN CO. OHIO 2008 NOV -3 PM 3: 04 CLERK OF COURTS-CV

## COMPLAINT
### WITH JURY DEMAND ENDORSED HEREON

    Now comes Nationwide Mutual Insurance Company, by and through counsel, and

for its complaint against B. Diane Tamariz-Wallace, Diane Tamariz & Associates, P.A.,

George T. Moran, Inc., and Moran Insurance Services, Inc. (collectively "Defendants")

hereby states as follows:

## I.   PERSONAL JURISDICTION AND VENUE

1.     This Court has personal jurisdiction over Defendants because Defendants have transacted business in Ohio, caused tortious injury in Ohio, and entered into the agreements that are the subject of this action in Ohio.

2.     Venue is proper in Franklin County where all or part of the claim for relief arose and where the parties entered into the agreements that are the subject of this action.

## II.   THE PARTIES

3.     Nationwide Mutual Insurance Company ("Nationwide") is a corporation duly created and organized under the laws of the State of Ohio.

4.     Defendant B. Diane Tamariz-Wallace ("Tamariz") is a resident of the State of Maryland, and at all material times herein has been the sole or majority shareholder of Defendants Diane Tamariz & Associates, P.A., George T. Moran, Inc., and Moran Insurance Services, Inc.

5.     Defendant Diane Tamariz & Associates, P.A. ("Tamariz & Associates") is a corporation duly created and organized under the laws of the State of Maryland.

6.     Defendant George T. Moran, Inc. ("George T. Moran, Inc.") is a corporation duly created and organized under the laws of the State of Maryland.

7.     Defendant Moran Insurance Services, Inc. ("Moran Insurance Agency" or the "Moran Agency") is a corporation duly created and organized under the laws of the State of Maryland.

8.     Non-Party Nationwide Bank is formerly known as Nationwide Federal Credit Union, a federally chartered credit union, and is now a federally chartered bank with its principal place of business in Columbus, Ohio ("Nationwide Bank").

2813410v1

III.  FACTS COMMON TO ALL CLAIMS

A.  <u>Tamariz's Long History as a Nationwide Agent</u>

9.    Tamariz has been an agent on behalf of Nationwide since approximately September 1989.

10.   During most of those almost 20 years, Tamariz was an independent contractor agent who owned and operated her own insurance agency, Tamariz & Associates.

11.   Tamariz is the sole shareholder of Tamariz & Associates.

12.   As the sole shareholder of Tamariz & Associates, Tamariz has sole control over all the operations of Tamariz & Associates, including decisions on leasing, employee staffing, agency marketing, acquiring agencies and books of business, and the like.

B.  <u>Tamariz Looks To Expand Her Agency</u>

13.   By 2004, Tamariz, with almost two decades in the insurance business, was an experienced and successful insurance agent who knew her business and knew the market in which she operated.

14.   In 2004, Tamariz began to look to expand her agency.

15.   Oftentimes, entrepreneurial exclusive agents like Tamariz desire to expand their business by acquiring other insurance agencies.

16.   Unfortunately for these exclusive agents like Tamariz, traditional commercial banks often refuse to loan money to agents for the purpose of acquiring other agencies since there are typically no hard assets or receivables that could be used a collateral to secure such a loan, since the insurance policies sold and premiums collected through an agency are not the property of the agency, but of the insurance company.

17.   In order to assist these agents in acquiring other agencies, Nationwide offers resources to them to assist in such expansion opportunities.

18.     Among the resources offered is access to credit that may not be available from a traditional commercial bank.

19.     Nationwide sponsors a loan program through its affiliate Nationwide Bank.

20.     This program is generally known as the Independent Agency Acquisition loan program ("IAA").

21.     IAA loans are generally made available to exclusive agents who want to purchase other agencies.

22.     The Bank underwrites such loans using its ordinary underwriting guidelines and offers such loans based in part upon a payment guarantee from Nationwide.

C.      The Moran Agency

23.     In the fall of 2004, Tamariz identified an insurance agency that she potentially wanted to acquire for herself in the form of an agency operated by George T. Moran.

24.     On October 8, 2004, Tamariz signed a letter of intent to George T. Moran indicating that she desired to purchase 100% of the shares of his agency, George T. Moran, Inc. (the legal name of The Moran Agency).

25.     In the course of her investigation of this acquisition, Tamariz retained her own outside due diligence firm, WFC Capital Advisors.

26.     Tamariz also retained her own legal counsel who negotiated and drafted terms of the purchase agreement.

27.     Tamariz also took part in drafting a business plan and pro forma financial statements for her new agency.

28.     Tamariz's business plan indicated that her existing agency had been growing at an 18% annual rate, had an aggressive marketing program in place, and was "well positioned to seize this sales opportunity and penetrate these markets in all product lines."

### D.    Tamariz Acquires The Moran Agency

29.    On March 11, 2005, Tamariz signed a Stock Purchase Agreement whereby she agreed to personally acquire all of the outstanding shares of stock of George T. Moran, Inc.

30.    The closing for Tamariz's acquisition of George T. Moran, Inc. occurred in May 2005.

31.    Under the terms of the acquisition, Tamariz's paid $3 million for the Moran Agency -- $2.25 million of which was to be paid at closing and the remainder paid by two promissory notes in the respective amounts of $500,000 and $250,000.

32.    The $500,000 note was to be payable in two equal installments, with the first $250,000 installment due in July 2006 and the second $250,000 installment due in July 2007.

33.    The remaining balance of the purchase price in the form of the $250,000 note was to be payable in July 2008.

### E.    Tamariz Utilizes The IAA Program To Purchase The Moran Agency

34.    In order to obtain the funds she needed to meet her down payment obligation under the Stock Purchase Agreement, Tamariz chose to participate in the IAA program by Nationwide.

35.    Pursuant to her participation in the IAA program, Tamariz acquired an IAA loan from Nationwide Bank.

36.    On April 26, 2005, Tamariz and Tamariz & Associates borrowed from Nationwide Bank the sum of $2.3 million, which loan was journalized in a certain Credit Agreement and Promissory Note signed by Tamariz both in her individual capacity and an officer of Tamariz & Associates (the "Promissory Note").  A true and accurate copy of the Promissory Note is attached hereto as Exhibit A.

2813410v1

37.     To provide collateral to secure collection of monies loaned under the

Promissory Note, on or about April 26, 2005, Tamariz and Tamariz & Associates also

executed a Security Agreement, whereby they granted a security interest to Nationwide

Bank in "all commissions, extended earnings, deferred compensation incentive credits,

bonuses (including post-conversion bonuses and contingency bonuses), and any other

compensation now due or becoming due in the future under the Agent's Agreement or any

future Agent's Agreement executed by and between Nationwide and the Agent (collectively,

'Collateral')" (the "Security Agreement"). A true and accurate copy of the Security

Agreement is attached hereto as Exhibit B.

38.     The terms of the Promissory Note required Tamariz and Tamariz &

Associates, as borrowers, to repay the $2.3 million loan over 288 semi-monthly installments

(144 months) at a variable interest rate of prime plus one percent.

39.     Nationwide guaranteed to Nationwide Bank the repayment obligations of

Tamariz and Tamariz & Associates under the loan.

F.      **Tamariz Defaults on the Promissory Note**

40.     In or about 2007, Tamariz and Tamariz & Associates stopped paying on their

loan.

41.     As a result, Tamariz and Tamariz & Associates went into default under the

terms of the Promissory Note.

42.     Under the Promissory Note's acceleration clause, upon default, all amounts

outstanding under the loan became immediately due and owing in full and began to accrue

interest at a rate of prime plus five percent.

43.     On or about June 23, 2008, Nationwide Bank assigned all of its right, title,

and interest in the Promissory Note and the Security Agreement to Nationwide.

44.     Pursuant to that assignment, Nationwide is now the owner and holder of Promissory Note and Security Agreement, with full rights to enforce the terms thereon.

45.     As a 100% owner of George T. Moran, Inc. and Moran Insurance Services, Inc., Tamariz has continued to enjoy revenue and the other benefits of ownership of the Moran Agency while failing to pay the loan that provided substantially all of the funds for her to purchase that agency.

### G.     Tamariz Stops Selling Nationwide Policies and Begins Diverting Nationwide Customers To Other Insurance Companies.

#### 1.     Corporate Agency Agreement

46.     On June 21, 2004, Tamariz & Associates entered into a Corporate Agency Agreement with Nationwide.  A true and accurate copy of the Corporate Agency Agreement is attached hereto as Exhibit C.

47.     Under the terms of the Corporate Agency Agreement, Tamariz & Associates, including its "Principal, directors, officers, and employees" were required to "represent Nationwide exclusively in the sale and service of insurance."

48.     As a result of their exclusive appointment as Nationwide agents, Tamariz & Associates and its owners, directors, officers, and employees agreed that they would not "solicit or write policies of insurance in companies" other than on behalf of Nationwide and Nationwide's related companies without the consent of Nationwide.

#### 2.     Corporate Associate Agent Agreement

49.     On August 26, 2005, Nationwide, Tamariz & Associates, and Moran Insurance Services, Inc. entered into a Corporate Associate Agent Agreement ("Associate Agent Agreement").  A true and accurate copy of the Corporate Associate Agent Agreement is attached hereto as Exhibit D.

50.    The purpose of the Associate Agent Agreement was to allow Moran Insurance Services to act as an associate agent of Tamariz & Associates for the purpose of writing Nationwide business.

51.    The Associate Agent Agreement expressly stated that Moran Insurance Services was subject to all of the terms of the Corporate Agency Agreement, including the obligation to exclusively represent Nationwide in the sales and servicing of insurance.

### 3.    Defendants sell business away from Nationwide and then stop offering or selling Nationwide policies altogether.

52.    Upon information and belief, Defendants have systemically undertaken to sell business away from Nationwide and have ceased selling or offering for sale any Nationwide products.

53.    For instance, one Nationwide customer received an unsolicited letter from Tracy Mazurowski, an associate agent for the Moran Agency, providing a cost comparison for insurance between Nationwide and another insurer and urging the Nationwide customer to switch to the competing company.

54.    In another instance, on September 26, 2008, a potential customer visited Tamariz & Associates and was not provided a quotation for Nationwide insurance, but was thereafter provided quotations by Matt Lehman at the Moran Agency for insurance from two competing insurance companies.

55.    In another instance, on October 1, 2008, a potential customer visited Tamariz & Associates requesting an automobile insurance quotation from Nationwide, but was instead directed to contact the Moran Agency to obtain quotations for insurance.

56.    That potential customer proceeded to the Moran Agency and met with Tracy Mazurowski, who provided the customer a quotation from a competing insurance company.

57.     In another instance, on October 2, 2008, a potential customer visited Tamariz & Associates and requested a commercial insurance quotation for his HVAC company.

58.     Upon being asked by the potential customer whether Tamariz sold Nationwide commercial policies, the receptionist at Tamariz & Associates instructed the potential customer to travel to the Moran Agency because all of the company's underwriters were in that office.

59.     The receptionist gave the potential customer the name, address, and directions to the Moran Agency.

60.     The potential customer traveled to The Moran Agency and met with Mr. Lehman, who provided the potential customer a commercial automobile insurance quotation from a competing company and failed to offer an insurance quotation for Nationwide or otherwise mention Nationwide by name.

61.     In another instance, upon a Nationwide customer's decision to transfer his business out from the Moran Agency to another Nationwide agent, Mr. Lehman, on behalf of the Moran Agency, sent to this Nationwide customer an unsolicited quotation for insurance from a competing company and urged the Nationwide customer to switch his insurance coverage to that competing insurance company.

62.     Defendants, upon information and belief, have also ceased virtually all efforts to sell Nationwide's products and have instead begun selling and offering for sale the products of Nationwide's competitors.

63.     Tamariz & Associates and the Moran Agency collectively initiated only one quotation for Nationwide insurance during the entire month of August 2008, only three quotations for Nationwide insurance during the entire month of July 2008, and no quotations for Nationwide insurance during the entire month of June 2008.

**H.**   **Nationwide Terminates Its Agency Relationship With Defendants**

64.   The foregoing conduct of Tamariz & Associates and the Moran Agency constituted serious and ongoing breaches of contractual and fiduciary duties owing by these agencies to Nationwide, as well as a significant ongoing risk to Nationwide's relationship with its policyholders.

65.   As a result, on November 3, 2008, Nationwide gave notice to Defendants of the immediate cancellation of their agencies appointments with Nationwide.

**COUNT I**
**Breach of Promissory Note/Amounts Due and Owing**
**(Tamariz and Tamariz & Associates)**

66.   Nationwide realleges and incorporates herein each and every allegation set forth above.

67.   As a result of the default of Tamariz and Tamariz & Associates under the Promissory Note, there is now currently due and owing to Nationwide principal and interest in the amount of $2,182,162.45, plus default interest accruing at a rate equal to the prime rate plus five percent per annum.

68.   Nationwide is entitled to judgment against Tamariz and Tamariz & Associates, jointly and severally, in the amount of $2,182,162.45, plus default interest accruing at a rate equal to the prime rate plus five percent per annum.

**COUNT II**
**Equitable Indemnification**
**(Tamariz and Tamariz & Associates)**

69.   Nationwide realleges and incorporates herein each and every allegation set forth above.

70.   As consideration for the assignment of the Promissory Note and Security Agreement, Nationwide paid to Nationwide Bank an amount equal to all principal and interest that was then due and owing by Tamariz and Tamariz & Associates.

71.     Such payment was made pursuant to a guarantee Nationwide had made to Nationwide Bank.

72.     As a result of the foregoing, and in the alternative, Nationwide is entitled to equitable indemnification from Tamariz and Tamariz & Associates in an amount equal to all payments made to Nationwide Bank relating to Defendants' loans.

73.     As a result of its right to equitable indemnification, Nationwide is entitled to judgment against Tamariz and Tamariz & Associates jointly and severally in the amount of $2,182,162.45.

## COUNT III
### Breach of Corporate Agency Agreement
(Tamariz & Associates)

74.     Nationwide realleges and incorporates herein each and every allegation set forth above.

75.     Tamariz & Associates, by virtue of its execution of the Corporate Agency Agreement, agreed to perform certain duties, including, without limitation, agreeing to represent Nationwide exclusively in the sale and service of insurance; agreeing not to solicit or write insurance policies with insurers other than Nationwide; and, agreeing to direct their efforts in the field of insurance toward advancing the business and interests of Nationwide to the best its ability.

76.     Tamariz & Associates breached its contractual duties as set forth above, including, without limitation, by switching, siphoning off, and facilitating the transfer of Nationwide policyholders to other insurers; refusing and failing to quote, sell, or offer for sale virtually any new Nationwide insurance policies during 2008; failing to use its best efforts to advance the business interests of Nationwide by acting in the aforesaid manner; interfering with Nationwide's right to retain and continue to provide insurance services to its policyholders and to continue to solicit such policyholders for additional business;

2813410v1

inducing and/or encouraging Nationwide policyholders and potential Nationwide policyholders to obtain insurance from Nationwide's competitors; furnishing and sharing the names and contact information for Nationwide's policyholders to Tamariz's other agencies; utilizing Nationwide's confidential property, expirations, renewals, and trade secrets to directly or indirectly solicit, switch, or service the insurance business of policyholders of Nationwide contrary to the terms and conditions of the Corporate Agency Agreement.

77.     Tamariz & Associates' breaches of the Corporate Agency Agreement have caused damage to Nationwide, which will continue into the future, consisting of, but not limited to, loss of renewal business from existing policyholders, loss of new business from existing policyholders, and loss of new business from new policyholders.

78.     Nationwide has been damaged by the foregoing breaches of Tamariz & Associates in an amount in excess of $25,000.

## COUNT IV
### Breach of Corporate Associate Agent Agreement
### (Tamariz & Associates and Moran Insurance Services)

79.     Nationwide realleges and incorporates herein each and every allegation set forth above.

80.     Tamariz & Associates and Moran Insurance Services, by virtue of their execution of the Corporate Associate Agent Agreement, agreed to perform certain duties, including, without limitation, agreeing to represent Nationwide exclusively in the sale and service of insurance; agreeing not to solicit or write insurance policies with insurers other than Nationwide; and, agreeing to direct their efforts in the field of insurance toward advancing the business and interests of Nationwide to the best ite ability.

81.    Tamariz & Associates and Moran Insurance Services breached their contractual duties as set forth above, including, without limitation, by switching, siphoning off, and facilitating the transfer of Nationwide policyholders to other insurers; refusing and failing to quote, sell, or offer for sale virtually any new Nationwide insurance policies during 2008; failing to use its best efforts to advance the business interests of Nationwide by acting in the aforesaid manner; interfering with Nationwide's right to retain and continue to provide insurance services to its policyholders and to continue to solicit such policyholders for additional business; inducing and/or encouraging Nationwide policyholders and potential Nationwide policyholders to obtain insurance from Nationwide's competitors; furnishing and sharing the names and contact information for Nationwide's policyholders to Tamariz's other agencies; utilizing Nationwide's confidential property, expirations, renewals, and trade secrets to directly or indirectly solicit, switch, or service the insurance business of policyholders of Nationwide contrary to the terms and conditions of the Corporate Associate Agent Agreement.

82.    Tamariz & Associates and Moran Insurance Services' breaches of the Corporate Associate Agent Agreement have caused damage to Nationwide, which will continue into the future, consisting of, but not limited to, loss of renewal business from existing policyholders, loss of new business from existing policyholders, and loss of new business from new policyholders.

83.    Nationwide has been damaged by the foregoing breaches of Tamariz & Associates and Moran Insurance Services in an amount in excess of $25,000.

## COUNT V
## Breach of Guaranty
### (Tamariz)

84.     Contemporaneously with Tamariz & Associates entering into the Corporate

Agency Agreement, Tamariz personally entered into a Guaranty, whereby she personally

guaranteed the performance of Tamariz & Associates under the Corporate Agency

Agreement.

85.     Such guarantee was subsequently incorporated into the Corporate Associate

Agent Agreement.

86.     Tamariz has waived any right to demand, protest, and notice under the

Guaranty.

87.     Tamariz & Associates and Moran Insurance Services have breached the

Corporate Agency Agreement and the Corporate Associate Agent Agreement as forth in the

preceding paragraphs.

88.     Tamariz is therefore liable for all damages resulting from Tamariz &

Associates' breaches of the Corporate Agency Agreement

89.     Nationwide has been damaged by the foregoing in an amount in excess of

$25,000.

## COUNT VI
## Breach of Fiduciary/Agent Duties
### (All Defendants)

90.     Nationwide realleges and incorporates herein each and every allegation set

forth above.

91.     Defendants, as insurance agents for Nationwide, occupied a position of trust

and confidence in their contractual, agency, and/or fiduciary relationship with Nationwide.

92.    Defendants, as agents and fiduciaries of Nationwide, had the duty to deal with Nationwide with the utmost care, trustworthiness, fairness, honesty, loyalty, diligence, and fidelity, and to avoid putting themselves in a position in which their personal interests conflicted with their duties and obligations to Nationwide.

93.    Defendants have breached their fiduciary duties to Nationwide as alleged herein.

94.    As a direct and proximate cause of Defendants' fiduciary breaches, Nationwide has suffered damages in an amount in excess of $25,000.

95.    The actions and conduct of Defendants as set forth herein were undertaken in bad faith and with ill will and malice, entitling Nationwide to punitive damages in an amount to be determined at trial.

### COUNT VII
### Fraud
### (All Defendants)

96.    Nationwide realleges and incorporates herein each and every allegation set forth above.

97.    By virtue of their fiduciary and contractual relationship with Nationwide, Defendants owed a duty of disclosure and candor to Nationwide.

98.    Defendants intentionally concealed and failed to disclose to Nationwide, among other things their diversion and attempted diversion of hundreds of Nationwide customers to other insurers.

99.    In none of the foregoing instances did Defendants disclose to Nationwide that they had and were continuing to sell away and siphon off business from Nationwide or intended to not sell, offer to sell, or quote any further Nationwide business.

100.    Such information was material to Nationwide in that Nationwide would not have continued to engage Defendants as agents on their behalf and would not have

guaranteed a $2.3 million loan on Defendants' behalf had they known of Defendants actions and true intentions.

101.    As a direct and proximate result of Defendants' conduct, Nationwide has suffered damages in an amount in excess of $25,000.

102.    The actions and conduct of Defendants as set forth herein were undertaken in bad faith and with ill will and malice, entitling Nationwide to punitive damages in an amount to be determined at trial.

## COUNT VIII
## Tortious Interference With Contract
## (All Defendants)

103.    Nationwide realleges and incorporates herein each and every allegation set forth above.

104.    Nationwide had contracts of insurance with certain of its customers, of which Defendants had knowledge, and therefore Defendants owed duties to Nationwide not to interfere with these insurance contracts.

105.    In numerous instances, Nationwide's customers either canceled or did not renew their insurance with Nationwide as a result of the intentional, improper instigation and inducement of Defendants to solicit, recommend, and divert said customers to other competing insurance carriers.

106.    Defendants intentionally interfered with these existing insurance contracts between Nationwide and its customers without justification and contrary to their contractual and fiduciary duties and obligations to Nationwide.

107.    The tortious actions of Defendants in interfering with the existing insurance contracts proximately caused damage to Nationwide, which will continue into the future, consisting of, but not limited to, loss of renewal business from existing policyholders, loss of new business from existing policyholders, and loss of new business from new policyholders.

108.    As a direct and proximate result of Defendants' conduct, Nationwide has suffered damages in an amount in excess of $25,000.

109.    The actions and conduct of Defendants as set forth were undertaken in bad faith and with ill will and malice, entitling Nationwide to punitive damages in an amount to be determined at trial.

## COUNT IX
## Tortious Interference With Prospective Business Relationship
### (All Defendants)

110.    Nationwide realleges and incorporates herein each and every allegation set forth above.

111.    Nationwide had certain potential contracts of insurance with potential customers, of which Defendants had knowledge or should have had knowledge and owed duties to Nationwide not to interfere with these potential insurance contracts.

112.    Nationwide's did not have the opportunity to enter into contracts with these potential customers as a result of the intentional, improper influence of Defendants, who either encouraged the potential policyholders to purchase insurance from another insurance company or failed to offer Nationwide insurance to the potential insured altogether.

113.    Defendants tortiously and/or intentionally interfered with these prospective insurance contracts without justification and contrary to their contractual and fiduciary duties and obligations to Nationwide.

114.    The tortious actions of Defendants in interfering with these prospective business relationships proximately caused damage to Nationwide, which will continue into the future, consisting of, but not limited to, loss of renewal business from existing policyholders, loss of new business from existing policyholders, and loss of new business from new policyholders.

115.   As a direct and proximate result of Defendants' conduct, Nationwide has suffered damages in an amount in excess of $25,000.

116.   The actions and conduct of Defendants as set forth were undertaken in bad faith and with ill will and malice, entitling Nationwide to punitive damages in an amount to be determined at trial.

WHEREFORE, Nationwide requests that it be granted judgment in its favor and that the Court award it compensatory and punitive damages in an amount that will be proven at trial, together with prejudgment and post-judgment interest, attorneys' fees and costs, and such other relief as the Court deems just and proper.

Respectfully submitted,

Quintin F. Lindsmith (0018327)
James P. Schuck (0072356)
BRICKER & ECKLER LLP
100 South Third Street
Columbus, Ohio  43215
(614) 227-2300
(614) 227-2390 (facsimile)
qlindsmith@bricker.com
jschuck@bricker.com

*Attorneys for Plaintiff*

## JURY DEMAND

Nationwide demands a trial by jury on all issues so triable.

James P. Schuck

18

**JOHN O'GRADY**
CLERK OF THE FRANKLIN COUNTY COMMON PLEAS COURT, COLUMBUS, OHIO 43215
**CIVIL DIVISION**

NATIONWIDE MUTUAL INSURANCE COMPANY
ONE NATIONWIDE PLAZA
COLUMBUS, OH 43215,

                                        08CVH-11-15749

          PLAINTIFF,
               VS.
B DIANE TAMARIZ-WALLACE
3069 SOLOMONS ISLAND RD
EDGEWATER, MD 21037,

          DEFENDANT.

               **** SUMMONS ****          11/19/08

TO THE FOLLOWING NAMED DEFENDANT:
     B DIANE TAMARIZ-WALLACE
     3069 SOLOMONS ISLAND RD
     EDGEWATER, MD 21037

YOU HAVE BEEN NAMED DEFENDANT IN A COMPLAINT FILED IN FRANKLIN COUNTY
COURT OF COMMON PLEAS, FRANKLIN COUNTY HALL OF JUSTICE, COLUMBUS, OHIO,
BY:    NATIONWIDE MUTUAL INSURANCE COMPANY
       ONE NATIONWIDE PLAZA
       COLUMBUS, OH 43215,

                                        PLAINTIFF(S).

A COPY OF THE COMPLAINT IS ATTACHED HERETO. THE NAME AND ADDRESS OF
THE PLAINTIFF'S ATTORNEY IS:
       QUINTIN F. LINDSMITH
       BRICKER & ECKLER LLP
       100 S THIRD STREET
       COLUMBUS, OH 43215

YOU ARE HEREBY SUMMONED AND REQUIRED TO SERVE UPON THE PLAINTIFF'S
ATTORNEY, OR UPON THE PLAINTIFF, IF HE HAS NO ATTORNEY OF RECORD, A COPY
OF AN ANSWER TO THE COMPLAINT WITHIN TWENTY-EIGHT DAYS AFTER THE SERVICE
OF THIS SUMMONS ON YOU, EXCLUSIVE OF THE DAY OF SERVICE. YOUR ANSWER
MUST BE FILED WITH THE COURT WITHIN THREE DAYS AFTER THE SERVICE OF A
COPY OF THE ANSWER ON THE PLAINTIFF'S ATTORNEY.

IF YOU FAIL TO APPEAR AND DEFEND, JUDGMENT BY DEFAULT WILL BE RENDERED
AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

JOHN O'GRADY
CLERK OF THE COMMON PLEAS
FRANKLIN COUNTY, OHIO

BY:  HENRY HELLING III, DEPUTY

                                        (CIIQ10-S03)


EXHIBIT A

JOHN O'GRADY
CLERK OF THE FRANKLIN COUNTY COMMON PLEAS COURT, COLUMBUS, OHIO 43215
CIVIL DIVISION


NATIONWIDE MUTUAL INSURANCE COMPANY,

        PLAINTIFF,

                    08CVH-11-15749
      VS.


B DIANE TAMARIZ-WALLACE,

        DEFENDANT.

        **** PERSONAL SERVICE RETURN   ****

ATTORNEY:   18327    QUINTIN F. LINDSMITH
          (614) 227-2300

      THE STATE OF OHIO, FRANKLIN COUNTY, SS.
TO THE PROCESS SERVER OF SAID COUNTY, GREETINGS:

YOU ARE HEREBY COMMANDED, FORTHWITH TO SERVE THE WITHIN COPY OF
    ORIGINAL SUMMONS

UPON:  B DIANE TAMARIZ-WALLACE
       3069 SOLOMONS ISLAND RD
       EDGEWATER, MD  21037-0000

                              ADDR: 1

YOU WILL MAKE DUE RETURN OF THIS ORDER BY THE 04 DAY OF DECEMBER , 2008.
WITNESS MY HAND AND SEAL OF SAID COURT, THIS  20 DAY OF NOVEMBER , 2008.

_____   JOHN O'GRADY
      DEPUTY CLERK             CLERK OF THE COMMON PLEAS COURT
                       FRANKLIN COUNTY, OHIO
***************************************************************

_____20_____ , I SERVED THE WITHIN NAMED _____

_____ PERSONALLY, WITH

CERTIFIED COPY OF _____ HEREWITH, AS BY
THIS ORDER I AM COMMANDED.

I WAS UNABLE TO SERVE WITHIN NAMED FOR THE FOLLOWING REASON:

_____

_____

BY _____ PROCESS SERVER
SERVICE    $_____
MILES      $_____
TOTAL FEES $_____
PLDF: B DIANE TAMARIZ-WALLACE                    (CIIQ11-S15)

JOHN O'GRADY
**CLERK OF THE FRANKLIN COUNTY COMMON PLEAS COURT, COLUMBUS, OHIO 43215**
CIVIL DIVISION

**JUDGE D. HOGAN**

NATIONWIDE MUTUAL INSURANCE COMPANY,

      PLAINTIFF,

                         08CVH-11-15749

    VS.

B DIANE TAMARIZ-WALLACE
ET. AL.,

      DEFENDANT.

CLERK'S AMENDED   CASE SCHEDULE
-----------------------------

**LATEST TIME**
OF OCCURRENCE

| | |
|---|---|
| CASE FILED | 11/03/08 |
| INITIAL STATUS CONFERENCE | ******** |
| INITIAL JOINT DISCLOSURE OF ALL WITNESSES | 03/23/09 |
| SUPPLEMENTAL JOINT DISCLOSURE OF ALL WITNESSES | 05/18/09 |
| TRIAL CONFIRMATION DATE | 06/01/09 |
| DISPOSITIVE MOTIONS | 08/10/09 |
| DISCOVERY CUT-OFF | 08/24/09 |
| DECISIONS ON MOTIONS | 10/05/09 |
| FINAL PRE-TRIAL CONFERENCE/ORDER (OR BOTH) | 10/27/09 0900AM |
| TRIAL ASSIGNMENT | 11/23/09 0900AM |

NOTICE TO ALL PARTIES
---------------------

    ALL ATTORNEYS AND PARTIES SHOULD MAKE THEMSELVES FAMILIAR WITH THE
COURT'S LOCAL RULES, INCLUDING THOSE REFERRED TO IN THIS CASE SCHEDULE.
IN ORDER TO COMPLY WITH THE CLERK'S CASE SCHEDULE, IT WILL BE NECESSARY
FOR ATTORNEYS AND PARTIES TO PURSUE THEIR CASES VIGOROUSLY FROM THE DAY
THE CASES ARE FILED.  DISCOVERY MUST BE UNDERTAKEN PROMPTLY IN ORDER TO
COMPLY WITH THE DATES LISTED IN THE RIGHT-HAND COLUMN.

                  BY ORDER OF THE COURT OF COMMON PLEAS,
                  FRANKLIN COUNTY, OHIO

__/__/__
DATE

                  JOHN O'GRADY, CLERK

(CIS50I-S10)