IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NATIONWIDE MUTUAL
INSURANCE COMPANY,

      PLAINTIFF,

v.

B. DIANE TAMARIZ-WALLACE, *et al.*,

      DEFENDANTS.

CASE NO. C2-08-1148
JUDGE EDMUND A. SARGUS
MAGISTRATE JUDGE MARK R. ABEL

## ORDER

This matter is before the Court pursuant to Defendant George T. Moran, Inc.'s motion to dismiss for lack of personal jurisdiction and, alternatively, for failure to state a claim (Doc. 18) and the remaining Defendants' motion to dismiss for lack of personal jurisdiction and improper venue or to transfer venue (Doc. 19). The subject matter of these motions is closely related, and they will be examined together.

### Factual Allegations in the Amended Complaint

The following allegations are taken from Plaintiff's Amended Complaint.[1] Nationwide Mutual Insurance Company ("Nationwide") has brought suit against B. Diane Tamariz-Wallace ("Tamariz"), Diane Tamariz & Associates, P.A. ("Associates

---

[1] Plaintiff's Amended Complaint (Doc. 11) was verified by John-Paul Purssord, a representative of Nationwide. Id. at 23.

PA"), George T. Moran, Inc., ("GTM"), and Moran Insurance Services, Inc. ("Moran Insurance Services"). Tamariz was, since 1989, a Nationwide insurance agent, operator and sole shareholder of her own insurance agency, Associates PA. In 2004, Tamariz decided to expand her business by acquiring GTM, another insurance agency. In May 2005, she signed an agreement to purchase GTM for $3 million, $2.25 million of which was due at closing, and the remainder in three annual installments.

Tamariz acquired the funds for the down payment by borrowing $2.3 million from Nationwide Bank, an affiliate of Plaintiff, through a loan program called Independent Agency Acquisition.[2] This loan was memorialized in a Credit Agreement and Promissory Note, which Tamariz signed both in her individual capacity and as an officer of Associates PA. She also executed a security agreement, granting Nationwide Bank a security interest in a wide variety of collateral, including all commissions from Nationwide. Nationwide guaranteed repayment of this loan to Nationwide Bank. In 2007, Tamariz and Associates PA went into default on the loan. In June 2008, Nationwide Bank assigned the note and security agreement to Nationwide.

Furthermore, Associates PA entered into a Corporate Agency Agreement with Nationwide in 2004. Under the terms of this agreement, Associates PA was required to solicit and write policies of insurance only on behalf of Nationwide. In

---

[2]The loan was made by Nationwide Bank's predecessor in interest, Nation-wide Federal Credit Union.

August 2005, after Associates PA purchased GTM, Nationwide, Associates PA, and Moran Insurance Services entered into a Corporate Associate Agent Agreement. This agreement permitted Moran Insurance Services to act as Associates PA's associate agent and write Nationwide business. It subjected Moran Insurance Services to the Corporate Agency Agreement. However, Associates PA thereafter allegedly began steering customers and potential customers to "the Moran Agency" to get quotations for insurance from other companies, and urging customers to switch away from Nationwide.[3] On November 3, 2008, Nationwide cancelled all of Defendants' agency appointments.

Nationwide has now brought claims against Tamariz and Associates PA for breach of the promissory note and equitable indemnification, against Associates PA for breach of the corporate agency agreement, against Associates PA and Moran Insurance Services for breach of the corporate associate agent agreement, against Tamariz for breach of the guaranty of performance in the corporate agency agreement, against all defendants for breach of fiduciary and agency duties, and against all defendants for fraud, tortious interference with contract, and tortious interference with prospective business relations. It characterizes Tamariz generally as having engaged in a scheme to induce Nationwide to make a loan which she would not otherwise have been able to obtain, and to then have used that loan to compete against Nationwide. (Doc. 22 at 1.)

---

[3]As addressed below, Plaintiff's account of these events is made somewhat unclear by its use of the ambiguous term "the Moran Agency" to refer to two different defendants.

3

**Pending Motions**

Defendant George T. Moran, Inc. has moved to dismiss for lack of personal jurisdiction, for improper venue, and for failure to state a claim upon which relief can be granted. Defendants Tamariz, Associates PA, and Moran Insurance Services have also moved to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim. In the alternative, these latter defendants move to transfer venue to the District of Maryland.

**Venue**

Both motions to dismiss request, *inter alia*, that this court dismiss this action under Fed. R. Civ. Pro. 12(b)(3) for improper venue. These arguments, which cite 28 U.S.C. §1391, the federal venue statute, are inapposite. 28 U.S.C. §1441, the federal removal statute, dictates the venue of cases removed from state court. The United States Supreme Court addressed a similar situation in *Policci v. Cowles Magazines, Inc,* 345 U.S. 663 (1953):

> This action was not 'brought' in the District Court, nor was respondent 'sued' there; the action was brought in a state court and removed to the District Court. Section 1441(a) expressly provides that the proper venue of a removed action is 'the district court of the United States for the district and division embracing the place where such action is pending.'

*Policci*, 345 U.S. at 666; *see also Kerobo v. Southwestern Clean Fuels Corp.*, 285 F.3d 531, 534 (6th Cir. 2002). Motions to dismiss under Fed. R. Civ. Pro. 12(b)(3) are not operative in actions which were removed to federal court, because those actions, if properly removed, are always properly venued. 28 U.S.C. §1391 "has no

4

application" to such cases. *Polizzi*, 345 U.S. at 665. There is no question that the suit at bar was originally brought in state court in Franklin County, Ohio, which is within the Eastern Division of the Southern District of Ohio; it is therefore properly venued here. Dismissal under Rule 12(b)(3) is unavailable. *Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365, 371 (6th Cir. 2008).

Defendants move, in the alternative, to transfer venue pursuant to 28 U.S.C. §1406. This statute provides for the cure or waiver of defects, stating in relevant part that:

> (a)  The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

As cases removed to federal court under 28 U.S.C. §1441(a) are always properly venued, however, there can be no defective venue to cure. A federal court cannot transfer a removed case under 28 U.S.C. §1406. "As its language suggests, the fundamental prerequisite for this statute's utilization is the impropriety of venue in the transferring or dismissing court. Since that situation is clearly not present here, Section 1406(a) is inapplicable." *Bacik v. Peek*, 888 F.Supp. 1405, 1413 (N.D. Ohio 1993). *See also Ferrell v. Grange Ins.*, 354 F.Supp.2d 675, 680 (S.D. W.Va. 2005) (transfer under §1406(a) not proper in a removed case); *Three M Ents., Inc. v. Texas D.A.R. Ents., Inc.*, 368 F.Supp.2d 450, 456 (transfer under §1406(a) not proper in a removed case). As one court succinctly put it, "[i]n accordance with the plain language of §1406(a), a court may only act pursuant to

5

this statute when a case is *filed* in the wrong venue. [...] [W]hen a case is removed from state court to federal court, the removal statute, 28 U.S.C. §1441, dictates venue." *Kotan v. Pizza Outlet, Inc.*, 400 F.Supp.2d 44, 46 (D.D.C. 2005) (emphasis in original).

The Court therefore will not entertain a motion to transfer this case under 28 U.S.C. §1406. However, an action can also be transferred pursuant to 28 U.S.C. §1404. This statute provides, in relevant part, that:

(a)     For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Defendants request that this action be transferred to the District of Maryland, arguing, amongst other things, that the majority of witnesses are located there. A removed action can be transferred pursuant to 28 U.S.C. §1404. *Bacik*, 888 F.Supp. at 1413. However, "a transfer under section 1404(a) may not be granted when the district court does not have personal jurisdiction over the defendants." *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993), citing *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980). Before the Court can evaluate whether or not to transfer this case to the District of Maryland under 28 U.S.C. §1404(a), it must address Defendants' arguments that it does not have personal jurisdiction over them. It will therefore turn to this matter first.

6

### Personal Jurisdiction Over Defendants

The defendants to this action comprise Diane Tamariz-Wallace herself, her original agency Diane Tamariz & Associates, P.A., Moran Insurance Services, Inc., and George T. Moran, Inc. Plaintiff claims that it has personal jurisdiction over Tamariz and over Associates PA because they entered into a commercial loan transaction in Ohio, and over Tamariz, Associates PA, MIS, and George T. Moran, Inc.because they have engaged in tortious conduct outside Ohio that they knew would cause substantial harm in Ohio to Nationwide. (Doc. 26 at 1; Doc. 22 at 2.) Defendant George T. Moran, Inc. argues that the allegations in Plaintiff's Amended Complaint are so vague that they do not demonstrate any basis for exercising personal jurisdiction over it, and that it has essentially no contacts with Ohio. (Doc. 18 at 2-6.) The other defendants argue that the loan agreements were actually created and executed in Maryland, that they have insufficient contacts with Ohio to warrant the exercise of personal jurisdiction, and that any tortious injury Plaintiff might have suffered would have been in Maryland. (Doc. 19 at 2-7.)

A person can be sued in federal court in Ohio if the law of Ohio would permit the exercise of jurisdiction over him under its "long-arm statute", and if the exercise of jurisdiction would not violate constitutional due process under the Due Process

7

Clause.[4] *Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). A plaintiff bears the burden of establishing the existence of jurisdiction. *Id.* However, where the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than conducting an evidentiary hearing or limited discovery, the plaintiff must make only a *prima facie* showing that personal jurisdiction exists. *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991). Furthermore, the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh "the controverting assertions of the party seeking dismissal." *Id.* *See also Estate of Thompson v. Toyota Motor Corp. Worldwide* 545 F.3d 357, 360 (6th Cir. 2008).

---

[4]Ohio's "long arm" statute, O.R.C. §2307.382, states in relevant part:
(A)     A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
      (1)     Transacting any business in this state;
      (2)     Contracting to supply services or goods in this state;
      (3)     Causing tortious injury by an act or omission in this state;
      (4)     Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; [...]
(6)     Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might     reasonably have expected that some person would be injured thereby in this state;  [...]

Diane Tamariz-Wallace and Diane Tamariz & Associates, P.A.

Plaintiff argues that these two defendants have consented to jurisdiction in Ohio, because they entered into a promissory note and a security agreement which contained such consent. Therefore, it claims, it has made a *prima facie* showing of personal jurisdiction over them. The defendants agree that this language is in the two contracts, but argue that it is there as the result of a mistake of fact, and that they otherwise never engaged in business in Ohio.

The "Credit Agreement and Promissory Note" recites, in relevant part:

> This Note was negotiated and accepted by the parties in the State of Ohio, and the Loan to be disbursed by [Plaintiff] in connection herewith is to be disbursed from Ohio. Therefore, Borrower agrees that the State of Ohio has a substantial relationship to the transaction contemplated herein, and agrees that this Note, and the rights and obligations of Borrower hereunder, shall be governed by the laws of the State of Ohio, excluding Ohio's conflicts of law provisions.

(Doc. 11-2 at 3.) The Security Agreement contains almost identical language. (Doc. 11-3 at 1.)

However, Tamariz claims, in an affidavit submitted in supplement to her motion to dismiss, that these documents misstate the facts, and that, notwithstanding the contractual language, they were negotiated and entered into in Maryland. (Doc. 24 at 2.) She claims that she never traveled to Ohio in connection with obtaining the loan or accepted any funds there, that the loan proceeds were wired directly to a bank account in Annapolis, Maryland, and that she both accepted and delivered the signed note to Plaintiff's offices in Annapolis. She also claims that she "probably would have sought to correct" the language of the notes if

9

she had realized that it could give rise to personal jurisdiction in Ohio. (Doc. 24 at 3.)

As noted above, the Court will view the pleadings and affidavits submitted in a light most favorable to the plaintiff. Here, for purposes of deciding a Rule 12(b)(2) motion, the Court declines to weigh the 'controverting assertions' of Tamariz that, although the contracts in question contain the language cited by Plaintiff, she did not understand its implications. A defendant may argue that a forum selection clause is invalid because its inclusion in a contract was induced by fraud or misrepresentation.[5] *Preferred Capital, Inc. v. Associates in Urology*, 453 F.3d 718, 722 (6th Cir. 2006). However, Tamariz has stated that she did not understand the possible consequences of the language, not that Plaintiff deceived her in some way. The recitations in the contract plainly amount to a *prima facie* showing that Tamariz transacted business for purposes of O.R.C. §2307.382(A)(1). Her conduct in signing the contracts and accepting the loan proceeds therefore has satisfied the requirements of Ohio's long-arm statute.

However, the Court must also determine whether the exercise of personal jurisdiction over Tamariz would comport with constitutional standards of due process. *Air Products*, 503 F.2d at 550. The Sixth Circuit Court of Appeals has consistently applied a three-part test for determining whether such jurisdiction may

---

[5]The Court observes that the language in question here is not actually a forum selection clause, because it simply recites that the parties are doing business in Ohio, not that the borrowers consent to the jurisdiction of the Ohio courts.

10

be exercised:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

With respect to the first of these factors, Plaintiff points to the contractual language previously addressed. As noted above, Tamariz on behalf of herself and her company entered into contracts which stated that they were negotiated and made in Ohio; she thereby acknowledged that she was purposefully availing herself of the privilege of doing business in Ohio. Moreover, the contracts were for a loan of money from a bank located in Ohio. The representations in the contract satisfy the second element as well.

The third element of the *Southern Machine* test exists because "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-478 (1985), quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). However, 'where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.' *Id.* at 477. Furthermore, where, as here, the first two criteria are met, "an inference

11

of reasonableness arises" and "only the unusual case will not meet this third criteria". *Theunissen*, 935 F.2d at 1461. "In considering whether the exercise of jurisdiction is reasonable, the court should consider, amongst others, the following factors: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy." *Air Products*, 503 F.3d at 554-555, citing *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005).

In this case, the Court finds that these defendants cannot overcome the inference of reasonableness. Tamariz borrowed money from an Ohio bank in order to facilitate a commercial transaction (the acquisition of a corporation). (Doc. 24 at ¶6-7.) Later, she traveled to Ohio to meet with representatives of the bank at their headquarters, in order to negotiate "an agreeable modification of the then existing contracts". *Id.* at ¶13. Although she now protests that she had no idea that she could be haled into court in Ohio, she purposefully availed herself of that forum by transacting business there. Such activities created enough of a connection with Ohio that she could reasonably anticipate being sued there. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263. (6th Cir. 1996). Therefore, the Court finds that it can exercise personal jurisdiction over Defendant Tamariz, and over Defendant Associates PA.

### George T. Moran, Inc. and Moran Insurance Services

The Amended Complaint employs the terms "The Moran Agency" and "the Moran Agency" to refer, apparently, to both George T. Moran, Inc and Moran

12

Insurance Services. The Amended Complaint contains no explicit definition of the terms "The Moran Agency," "the Moran Agency" or "Moran Agency." Initially, it identifies Moran Insurance Services as "'Moran Insurance Agency' or the 'Moran Agency.'" (Doc. 11, ¶ 7.) That is the only express reference in the Amended Complaint to Moran Insurance Services as "the Moran Agency."

The Amended Complaint first identifies George T. Moran, Inc. as "George T. Moran, Inc." (Doc. 11, ¶ 6.) Later it pleads that George T. Moran, Inc. is "the legal name of The Moran Agency." *Id.* at ¶24 and Headings D. and E. The factual allegations supporting Nationwide's claims that George T. Moran, Inc. and Moran Insurance Services breached fiduciary/ agent duties, committed fraud by intentionally concealing and failing to disclose to Nationwide their diversion and attempted diversion of Nationwide's customers and potential customers, tortious interference with contracts, and tortious interference with prospective business relationships[6] do not separate out the conduct of these two defendants. Instead, they plead the role that identified employees of "the Moran Agency" played in diverting business from Nationwide to its competitors. (Doc. 11, ¶¶ 53-61.) For example, the Amended Complaint alleges that "on September 26, 2008, a potential customer visited Tamariz & Associates and was not provided a quotation for Nationwide insurance, but was thereafter provided quotations by Matty Lehman at the Moran Agency for insurance from a competing insurance company." *Id.,* ¶ 54.

---

[6]Counts VI through IX of the Amended Complaint.

13

Defendant George T. Moran, Inc. argues that it is inaccurate and improper for Plaintiff to refer to both George T. Moran, Inc. and Moran Insurance Services collectively by this label. (Doc. 18 at 7.)

Plaintiff claims with respect to Defendant George T. Moran, Inc. that it "through its agent and sole owner, Diane Tamariz ... has committed intentional torts, such as fraud and tortious interference, which had the intent of injury Nationwide in Ohio." (Doc. 22 at 2.) It does not precisely articulate the tortious activities of Defendant Moran Insurance Services, except to state generally that "Defendants participated in a fraudulent scheme [...] to induce Nationwide to make a $2.3 million loan to further Tamariz and her agencies." (Doc. 26 at 9.) Nevertheless, the essence of its argument against these two companies is that they are tortfeasors who engaged in conduct outside Ohio with the purpose of causing injury, when they might reasonably have anticipated that a person in Ohio would be injured thereby. Consequently, their alleged conduct gives rise to long-arm jurisdiction under O.R.C. §2307.238(A)(6).

Moreover, the Court's analysis of whether the Amended Complaint makes a *prima facie* showing of tortious activity on the part of certain defendants is, to some extent, inextricably linked to an analysis of whether or not it states a claim against such defendants upon which relief can be granted. However, a district court cannot adjudge that a complaint fails to state a claim against a defendant over whom it has no jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-95 (1998), citing *Ex parte McCardle*, 7 Wall. 506, 514 (1868). *See also Airline Profs. Ass'n of*

14

*Intern. Broth. of Teamsters v. Airborne, Inc.*, 332 F.3d 983, 986 fn2 (6th Cir. 2003);
*Bird v. Parsons*, 289 F.3d 865, 872-873 (6th Cir. 2002). Therefore, the Court will
examine the Amended Complaint's allegations for the purpose of determining
whether what it alleges occurred falls under O.R.C. §2307.238(A)(6). However, this
limited jurisdictional inquiry does not extend to whether it states a claim upon
which the Court can grant relief.

The Amended Complaint alleges that Tamariz used the loan proceeds to
purchase George T. Moran, Inc. in May 2005. (Doc. 11 at ¶29, 34.) It alleges also
that Tamariz, Associates PA, and a third entity, MIS, entered into a Corporate
Associate Agent Agreement in August 2005. (Doc. 11 at ¶49.) This agreement,
according to its terms, permitted Moran Insurance Services to sell various lines of
Nationwide insurance products through Associates PA, and subjected Moran
Insurance Services to all terms of Associates PA's agent agreement with
Nationwide. (Doc. 11-5 at 1-2.) One of those terms was that they would represent
Nationwide exclusively, and could not solicit or write policies of insurance in
companies other than Nationwide without its consent. (Doc. 11-4 at 2.)

Plaintiff further alleges that, after Tamariz's purchase of George T. Moran,
Inc., "Defendants" began systematically undertaking to sell business away from
Nationwide. (Doc. 11 at ¶52.) It claims that Associates PA and "the Moran Agency"
on several occasions provided prospective customers quotes for insurance from other
companies, and that they have now ceased any efforts to sell Nationwide products.
Plaintiffs have therefore brought claims for various commercial torts relating to this

15

wrongful activity, and for breach of Moran Insurance Services' associate agent agreement.

A review of the Amended Complaint indicates that it does not separately, expressly allege tortious activity by Defendant GTM.[7] The tortious activity is alleged to have been undertaken by "the Moran Agency." George T. Moran, Inc. does not appear in Plaintiff's narrative, except for references to it as the corporation which Tamariz purchased. Plaintiff's allegations pled against George T. Moran, Inc. are little more than that it was involved somehow in the alleged scheme; certainly George T. Moran, Inc.was not a signatory to the Corporate Associate Agent Agreement. Plaintiff has not made a *prima facie* showing that George T. Moran, Inc. caused injury to Nationwide in Ohio by engaging in tortious activity elsewhere, and has not satisfied O.R.C. §2307.382(A)(6).

Plaintiff claims with respect to Defendant Moran Insurance Services that it fraudulently concealed its activities in breaching its contractual obligations of exclusivity and diverting business elsewhere.[8] Under Ohio law, a breach of contract does not itself create a tort claim. *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981). A tort claim based upon the same actions as those upon which a

---

[7]As noted above, the Court does not find today that Plaintiff has failed to state a claim upon which relief can be granted against Defendant George T. Moran, Inc. It makes no ruling on that defendant's motion to dismiss under Fed. R. Civ. Pro. 12(b)(6).

[8]As Defendants point out, Nationwide's alleged reliance to its detriment includes having made the $2.3 million loan to Tamariz which purchased MIS. If, as Plaintiff alleges, Moran Insurance Services' diversion of business to other insurance carriers occurred after its purchase by Tamariz, then its fraudulent concealment of this diversion could not have induced the original loan.

16

claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract – that is, a duty owed even if no contract were to exist. *Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir. 1976); see also *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137 (Ohio App. 1996).

Here, Plaintiff alleges that Moran Insurance Services owed a duty of disclosure and candor to Nationwide "[b]y virtue of [its] fiduciary and contractual relationship with Nationwide." Doc. 11 at ¶97. The existence of a duty established by contract will not change a failure to disclose a breach into a fraudulent concealment. *Textron Fin. Corp., supra*. The existence of a fiduciary *relationship* arising out of Moran Insurance Services' status as a corporate associate agent may, because nondisclosure of material fact can constitute fraud when a defendant has a fiduciary duty to disclose such fact. *Applegate v. Fund for Constitutional Gov't.*, 70 Ohio App.3d 813, 882 (Ohio App. 1990). In this case, the Court will conclude that Plaintiff has at least made a colorable allegation that Moran Insurance Services bore it a fiduciary duty to disclose business activities which violated its exclusivity agreement.

The exercise of long-arm jurisdiction under O.R.C. §2307.382(A)(6) also requires, however, that the act committed outside Ohio be "committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state." Plaintiff argues that the place where Nationwide's injury took place was its headquarters in Ohio, and that

17

Defendants could reasonably have expected this. (Doc. 26 at 9.) Defendants rejoin that as the loss of customers alleged took place in Maryland, Nationwide's loss of premium revenue from those customers would logically have taken place there as well. (Doc. 28 at 5.)

Plaintiff cites, in support of its position that the harm from loss of business in Maryland is felt in Ohio, three cases: *Scotts Co. v. Aventis S.A.*, 145 Fed.Appx. 109 (6th Cir. 2005), *Ashton Park Apartments, Ltd.*, 252 F.Supp.2d 539 (N.D. Oh. 2003), and *NPF XII, Inc. v. Special Care, Inc.*, 2001 WL 175263 (S.D. Oh. 2001). Though the court found jurisdiction in each, none of these cases actually addresses the standard to be used in applying O.R.C. §2307.382(A)(6); *q.v. Scotts Co.*, 145 Fed.Appx. at 112 (parties did not dispute issue); *Ashton Park Apartments*, 252 F.Supp.2d at 547-548 (concluding without discussion that statute was satisfied); NPF XII, Inc. at *4 (finding that corporate officer satisfied statute personally because of undisputed connections in official capacity).

In *Specialized Machinery Hauling and Rigging, LLC v. D&L Transport, LLC*, 2009 WL 1045908 (S. D. Ohio 2009), this court reviewed case law concerning §2307.382(A)(6) and concluded that section (A)(6) will confer personal jurisdiction when the claim in question was related to property located in Ohio or the tortious injury was suffered in Ohio, but that it would not confer jurisdiction when the claim in question was related to property not located in Ohio and the injury was not suffered in Ohio. *Id.* at *10. Plaintiff argues that the principal place where tortious injury to commercial interests occurs is in the state where the consequences are felt.

18

By implication, Plaintiff seems to be claiming that the consequences of Moran Insurance Services' alleged diversion of business and concealment of its diversion was the loss of revenue which ultimately would have flowed back to Ohio.

The Court is unconvinced by this argument. As its name implies, Nationwide has a presence in many different states aside from its headquarters in Ohio. Plaintiff does not dispute Defendants' averments that the insurance agencies here operated in Maryland and the Washington, D.C. metropolitan area. If, as Plaintiff claims, they wrongly diverted business opportunities, then they wrongly diverted opportunities for Nationwide to do more business outside Ohio, and the situ of those tortiously lost business opportunities were outside Ohio. Plaintiff cannot plausibly argue that every commercial injury which it suffers nationwide is really "felt" in Ohio, rather than in its business operations in the place where the wrong was committed – especially where what Nationwide allegedly lost was essentially the ephemera of prospective new business outside Ohio.[9] Put simply, if Defendants harmed Plaintiff's prospects to do business in Maryland, then Plaintiff felt the consequences in Maryland.[10]

---

[9]"The tortious actions of Defendants ... proximately caused damage to Nationwide ... consisting of, but not limited to, loss of renewal business from existing policyholders, loss of new business from existing policyholders, and loss of new business from new policyholders." Doc. 11 at ¶ &p p 107, 114.

[10]The Court does not hold that committing a tort in connection with obtaining a loan from an Ohio bank could not give rise to long-arm jurisdiction under O.R.C. §2307.382(A)(6). However, as noted above, the tort claims which Plaintiff has pled against Moran Insurance Services do not directly relate to the loan transaction. Instead, they relate to the diversion of insurance business outside Ohio.

Therefore, the Court concludes that Plaintiff has not successfully pled that Defendant Moran Insurance Services has caused tortious injury in Ohio for purposes of finding personal jurisdiction under O.R.C. §2307.382(A)(6). Moreover, as the Court has found that neither George T. Moran, Inc. nor Moran Insurance Services is subject to personal jurisdiction under Ohio's long-arm statute, it is unnecessary for it to consider whether asserting personal jurisdiction over them would comport with constitutional standards of due process. These two defendants are properly dismissed for lack of personal jurisdiction.

**Transfer under 28 U.S.C. §1404**

Defendants argue in the alternative that, if the Court does not dismiss the action against them, it should transfer the action under 28 U.S.C. §1404(a) to the United States District Court for the District of Maryland. As this court has determined that it has personal jurisdiction over defendants Tamariz and Associates PA, it can entertain such a request with respect to those undismissed defendants.

As a preliminary matter, the Court notes that the doctrine of *forum non conveniens* has been superseded by statute. 28 U.S.C. § 1404. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722 (1996); *see also Siochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430 (2007); *American Dredging Co. v. Miller*, 510 U.S. 443, 449 (1994); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981); *Genesis Ins. Co. v. Alfi*, 425 F.Supp.2d 876, 895 (S.D. Ohio 2006); *Bacik*, 888 F.Supp. 1405 at fn2.

20

A federal court may transfer any civil action "in the interest of justice... to any other district or division where it might have been brought", for "the convenience of parties and witnesses".[11]  28 U.S.C. §1404(a).   In ruling on a motion to transfer under §1404(a), a district court should consider "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public interest concerns, such as systematic integrity and fairness, which come under the rubric of 'interests of justice'." *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991), quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988).  Furthermore, a court can consider other factors, such as the existence of a forum selection clause, the relative ease of access to sources of proof, the availability of process to compel attendance of unwilling witnesses, the cost of obtaining willing witnesses, and the practical problems associated with trying the case most expeditiously and inexpensively. *Genesis Ins. Co.*, 425 F.Supp.2d at 896-897.

The Court reiterates that the Credit Agreement and Security Agreement do not include forum selection clauses.  Although these documents recite that they are to be governed by Ohio law, they do not recite that only Ohio courts should hear cases arising out of them.  Neither Tamariz' Corporate Agency Agreement nor the Corporate Associate Agent Agreement contains any recitations at all with respect to Ohio law or courts.  (Docs. 11-4, 11-5.)  Furthermore, the parties have not presented

---

[11]There appears to be no dispute that this action could have been brought in federal court in Maryland.

21

any specific reasons to think that the federal court in Maryland could not efficiently administer this case, or that there exist important differences between Ohio and Maryland law which would impair the adjudication of this case there.

The interests of convenience in this matter, it is apparent, relate most strongly to the availability of witnesses and of discovery materials. Plaintiff asserts that "Nationwide's proof will necessarily require testimony from its own employees, most of whom live and work in central Ohio. In addition, Nationwide will require testimony from various non-party witnesses located in Ohio, including individuals from Nationwide Bank, headquartered in Columbus, Ohio." (Doc. 26 at 13.) Defendants rejoin that "[h]olding a case in Ohio when the majority of the parties and witnesses are in Maryland creates an inconvenience to the witnesses and substantial potential prejudice of the administration of justice." (Doc. 28 at 10.)

Plaintiff has pled this action as one for the recovery of money on a loan which was not repaid, and for damages and injunctive relief upon tortious activity arising from the actions of an unfaithful insurance agent. It appears most likely that it is Plaintiff's tort claims which will produce the bulk of discovery, and concerning which the most witnesses will testify. This case is a lawsuit concerning a loan to a Marylander and a Maryland company to purchase a Maryland corporation which did business in Maryland selling insurance policies to Marylanders, and an alleged wrongful diversion of business in Maryland. The witnesses to the events here, including the customers who went to the defendant agencies and were allegedly diverted to other insurance carriers, are primarily in Maryland. (Doc. 11 at ¶54-

22

63.)  The employees of the defendant agencies who would have done such diversion, such as Tracy Mazurowski and Matt Lehman, are in Maryland.  (Doc. 11 at ¶¶ 53, 54.)  The records of Associates PA, MIS, and George T. Moran, Inc. about such transactions are in Maryland.

It therefore appears to the Court that the convenience of parties and witnesses mandates a transfer of this action to the federal court in Maryland.  The inconvenience of Nationwide in proceeding in Maryland is outweighed by the substantial convenience of the opposing parties and of the majority of witnesses in litigating in their own state.  Therefore, this action will be transferred pursuant to 28 U.S.C. §1404.

### Conclusions

Defendant George T. Moran's Motion to Dismiss (Doc. 18) is **GRANTED**, and the remaining Defendants' motion (Doc. 19) is **GRANTED IN PART**.  Because this Court does not have personal jurisdiction over them, Defendants George T. Moran, Inc. and Moran Insurance Services, Inc. are hereby **DISMISSED** from this action.  However, this dismissal is **WITHOUT PREJUDICE** to a later request, in Maryland, to join them as parties.

This Court has jurisdiction over the remaining defendants, Diane Tamariz-Wallace and Diane Tamariz & Associates, P.A.. It is hereby **ORDERED** that this case be, and is, transferred to the United States District Court for the District of Maryland, pursuant to 28 U.S.C. §1404(a).

6-18-2009
DATE

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE